INHABITANTS OF CAMDEN *vs.* INHABITANTS OF BELGRADE.

Knox.    Opinion April 7, 1886.

*Evidence.   Secondary evidence.   Marriage, proof of.   New trial.   Practice.*

Whether the evidence of the loss or destruction of a paper is sufficient to let in secondary evidence of its contents, is a question addressed to the discretionery power of the presiding judge.

To let in oral evidence of the contents of a lost paper, it is sufficient if the witness can state the substance of its contents.

A paper found in the possession of one of the parties to an alleged marriage, or produced by such party, purporting to be a marriage certificate, is admissible in proof of marriage, in civil cases other than actions for seduction, without proof of its genuineness, or that it was given by one acting in an official capacity.

In proof of a disputed marriage in civil suits, ( other than actions for seduction) cohabitation, reputation, the declarations of the parties — written or oral — and their conduct, and all other circumstances usually attending the marriage relation and indicative of its existence, are admissible in evidence ; and where there is shown to have been cohabitation for some years and children born to the parties, it is admissible to show what kind of a family the woman had previously belonged to and what kind of a home she had left.

A motion for a new trial on the ground of newly discovered evidence will not be granted if the evidence in support of it is not taken within the time ordered by the court.

ON exceptions and motion.

An action for pauper supplies furnished William O. Kaherl and his wife, Mary O. Kaherl, and their children. It was admitted that the settlement of William O. Kaherl was in Belgrade, and the settlement of his wife, before her marriage to him, was in Camden. The defence only related to the settlement of Mary O. Kaherl and the children; the defendants contending that Kaherl was previously married to Esther A. Craig, who was living and was his lawful wife at the time of Kaherl's marriage with Mary O. Kaherl, and that, upon that ground, the latter marriage was void.

*A. P. Gould,* for the plaintiffs.

When secondary evidence is resorted to for proof of an instrument which is lost or destroyed, its execution must be proved. This is a general rule. 1 Greenl. Ev. (13th ed.) § 558, note 4; *Kimball* v. *Morrell,* 4 Maine, 368, where our court say : " When a party, on an issue to the country, would avail himself of an instrument in writing, lost by time and accident, he should first prove that the instrument was duly executed; then, and not till then, he is permitted to give evidence of its contents."

This is applicable to all classes of instruments which, if produced in court, would be pertinent in the proof of a fact at issue. 1 Whart. Ev. §§ 140, 141, 142, and authorities cited in notes.

In *Dunlap* v. *Glidden,* 31 Maine, 510, the defendants "proposed to prove a conveyance, by parol evidence of the contents of a lost deed, the execution of which was not proved." Court held that the testimony was inadmissible, and that, if admitted, it would not prove a conveyance.

In *Edwards* v. *Noyes,* 65 N. Y. 125, it was held that " parol evidence to prove the contents of a lost deed must show that the deed was duly executed as required by law, and should show substantially all its contents."

In *Kelsey* v. *Hanmer*, 18 Conn. 311, it was held that "in the case of a lost instrument, it is incumbent upon the party to prove, not only its loss, but its existence as a genuine instrument, before he can give evidence of its contents."

No evidence was presented showing that any man by the name of John Young signed the pretended certificate, or whose hand writing the body of the certificate, or signature, was. And it had no date which is essential. *Gaines* v. *Relf*, 12 How. 472, 553 ; *Kinney* v. *Flynn*, 2 R. I. 319 ; *Railroad Bank* v. *Evans*, 32 Ia. 202 ; *Settle* v. *Allison*, 8 Geo. 201 ; 1 Whart. Ev. § 122 ;

As to the necessary form of a certificate in such case see 1 Bish. Mar. and Div. § 468.

No certificate can possess an official character which is not sufficiently signed. *People* v. *Eureka Lake Co.* 48 Cal. 143 ; *Wickliffe* v. *Hill*, 3 Littell, (Ky.) 330 ; *Connelly* v. *Bowle*, 6 Har. & John, 141 ; R. S., c. 59, § 15 ; Laws 1846, c. 190 ; 1 Starkie's Ev. 174, note (e).

In *Wedgwood's case*, 8 Maine, 75, the evidence was a certified copy from the town records of the certificate of the magistrate who solemnized the marriage, in which he certifies in his official character of justice of the peace. The court seems to approve that kind of evidence in divorce cases, but held it not sufficient in an indictment for adultery.

In *Jones* v. *Jones*, 18 Maine, 308, the certificate of Judge Gilman, in which he certifies, both as a justice of the peace and judge of the municipal court of the town of Hallowell, seems to have been held sufficient, in a divorce case, to prove the marriage.

In *State* v. *Hodgskins*, 19 Maine, 155, the court, in distinguishing between a marriage inferable from circumstances, and a marriage in *fact*, proof of which is necessary in criminal cases, holds, that proof of the performance of the ceremony of marriage by a person who *appeared* to have authority, was not sufficient. And it was held that there must be affirmative proof of the official character of the person who in fact solemnized the marriage.

In *Commonwealth* v. *Morris*, 1 Cush. 391, the court say :

"A certificate, purporting to be a marriage certificate, made by a clergyman of another state, was offered by the prosecution to prove the defendant's marriage, and was objected to, but admitted. We are of opinion that the paper, wholly unauthenticated, was not competent evidence, and ought not to have been admitted. And it received no additional weight by coming from the custody of the woman alleged to be his wife."

The judge, in his instructions to the jury, authorized them to give the certificate greater probative force than it was entitled to, even if it was receivable for any purpose.

In proof of a marriage in a suit between strangers to both parties, the declarations of either of the alleged parties to the marriage, can be received only as a part of the *res gestae.* They must accompany some act of deportment, or attend the intercourse of the parties, such as addressing each other as persons actually married. 1 Greenl. Ev. (13th ed.) § § 307, note 4, and 108 ; *Posterns* v. *Posterns,* 3 Watts & Serg. 327 ; 2 Greenl. Ev. (13th ed.) § § 461, 462, and notes and authorities cited ; 1 Greenl. Ev. § 110, (13th ed).

Evidence that the Craig family "were good farmers, and owned a large farm, well off," was inadmissible. How this evidence became competent, it is difficult for us to see. Even if the character of the family was admissible, that it was good because they owned a large farm, would be a *non sequitur.* The use made of it was mischievous. It was a link in a chain of fiction, by which it was attempted to be shown that this Esther, who had a child by Kaherl in December, 1867, and lived with him as her husband the next year, and married Ruth in 1870, while Kaherl was still living, belonged to a respectable family *ergo,* that she was a respectable woman.

On the motion for a new trial counsel cited : *Holley* v. *Young,* 68 Maine, 215 ; *Hastings* v. *McKinley,* 2 E. D. Smith, 45 ; *Shen. Bank* v. *Wab. & St. L. R. Co.* 61 Iowa, 700 ; *Jones* v. *Fennimore,* 1 Iowa, 134 ; *Jackson* v. *Warford,* 7 Wend. 62 ; *Keller* v. *Savage,* 20 Maine, 199, 203 ; *Ellis* v. *Ellis,* 11 Mass. 92 ; *Clayton* v. *Wardell,* 5 Barb. 214 ; S. C. 4 Comstock, (4 N. Y.) 230 ; *Myatt* v. *Myatt,* 44 Ill. 473 ; *Seuser* v. *Bower,* 1 Penrose

& Watts, 450; *Houpt* v. *Houpt*, 5 Ohio, 539; *Jones* v. *Jones*, 45 Md. 144, and 48 Md. 361; *Archer* v. *Haithcock*, 6 Jones Law, N. C. 421; *Taylor* v. *Taylor*, 2 Lee, 274, (6 Eng. Eccl. R 124); *Breakley* v. *Breakley*, 2 U. C. Q. B. 349; *Wheeler* v. *Mc Williams*, 2 U. C. Q. B. 77; S. C. 3 U. C. Q. B. 165; *George* v. *Thomas*, 2 U. C. Q. B. 604; 1 Bishop on Mar. & Div. Sects. 444 & 446.

*Baker*, *Baker and Cornish*, for the defendants, cited: *Badger* v. *Badger*, 88 N. Y. 546 (42 Am. Rep. 263); 1 Bishop on Marriage and Divorce, § 438; Hillard on New Trials, Chap. 15, § 35; *Camden* v. *Belgrade*, 75 Maine, 126; 2 Whar. Ev. § 1246 and cases; *Knowles* v. *Scribner*, 57 Maine, 497; *Ellis* v. *Buzzell*, 60 Maine, 209; 2 Greenl. Ev. § 463; *Doe* v. *Grazebrook*, 4 Ad. and El. (N. S.) 406; *Com.* v. *Morris*, 1 Cush. 291; *Sumner* v. *Sebec*, 3 Maine, 223; 1 Whar. Ev. § 653 and note 4; 1 Greenl. Ev. § 74, note 484 and cases; 1 Whar. Ev. § 655; *Derby* v. *Salem*, 30 Vt. 722; *Kennedy* v. *Doyle*, 10 Allen, 164; *Central Bridge Corp.* v. *Butter*, 2 Gray, 132; *Spaulding* v. *Hood*, 8 Cush. 605; *Blanchard et al.* v. *Young*, 11 Cush. 345.

WALTON, J. This is a pauper suit, and is a second time before the law court. The question formerly presented was whether a subsequent marriage could be invalidated by circumstantial evidence of a prior marriage; and it was held that it could. *Camden* v. *Belgrade*, 75 Maine, 126.

The case has been again tried, and is now before the law court: (1.) On exceptions to the admission of evidence; (2.) On exceptions to the charge of the judge; (3.) On motion for a new trial on the ground that the verdict is against evidence; (4.) On motion for a new trial on the ground of newly discovered evidence.

1. Of the exceptions to the admission of evidence. Witnesses were allowed to testify that in 1854, after Kaherl and Esther A. Craig commenced to live together as husband and wife, she showed them what purported to be a marriage certificate; and, evidence of the loss or destruction of the paper having been first

introduced, oral evidence of its contents was received. It is claimed that this evidence was improperly admitted, because the evidence of the loss or destruction of the paper was not sufficient, and because the witnesses were unable to give the whole contents of the paper, and because the genuineness of the paper was not shown, and because it did not purport to be executed in an official capacity. Whether the evidence of the loss or destruction of a paper is sufficient to let in secondary evidence of its contents is a question addressed to the discretionary power of the presiding judge; and, in the absence of any apparent abuse of his authority, his decision of the question is not revisable by this court. No such abuse is apparent in this case. And to let in oral evidence of the contents of a lost paper, it is not necessary that the witnesses should be able to state the contents with entire verbal accuracy; it is sufficient if they can state the substance of its contents. *Tobin* v. *Shaw*, 45 Maine, 331. In the case cited, in speaking of a letter which she had destroyed, the witness said, "I can't recollect the whole, but can the substance," and she was then allowed to state what she could recollect of its contents, and the law court held that the evidence was properly admitted. And see *Com.* v. *Roark*, 8 Cush. 210. We think the witnesses in this case were able to state the contents of the marriage certificate with sufficient fullness to render their testimony admissible. And the admissibility of such a certificate, or, in case of its loss, oral evidence of its contents does not depend upon the genuineness or official character of the document. It being a settled rule of law that marriage may be proved in civil cases, other than actions for seduction, by reputation, declarations, and conduct of the parties, a paper found in the possession of one of the parties to the alleged marriage, or produced by such party, purporting to be a marriage certificate, is admissible upon the ground that such a possession or such a production of it is equivalent to a declaration of such party that the facts stated in the certificate are true. As evidence of an implied declaration, or admission, or as an act of one of the parties, such a certificate is admissible without

separate and distinct evidence of its genuineness, or that it was given by one acting in an official capacity. Proof of its genuineness, and that it was given by one acting in an official capacity, may enhance its weight, but will not affect its admissibility. It is admissible without such proof. And if it were not admissible without some evidence of its authenticity, the fact that it is kept and produced by one of the parties as evidence of the marriage, would be sufficient evidence of its genuineness to render it admissible. 2. Gr. Ev. § 462-3; 1 Gr. Ev. § 104, *et seq.*

2. Complaint is made that the rule admitting the declarations of the parties to the supposed marriage was administered too liberally. It is claimed that such declarations are admissible only as *res gesta*, and when made in the presence of each other. We find no authority for such limitations of the rule. In proof of a disputed marriage in civil suits (other than actions for seduction,) cohabitation, reputation, the declarations of the parties, written or oral, and their conduct, and all other circumstances usually attending the marriage relation and indicative of its existence, is admissible evidence. Its weight of course is for the jury. All the evidence objected to was admissible under some one of these heads, with one exception. One witness was allowed to state that the Craig family was made up of Augustus, Esther, Albert, Horace, Mr. and Mrs. Craig; that they lived on a farm, were good farmers, owned a large farm, and were well off. It is claimed that this evidence was inadmissible, and that the use made of it was mischievous. We think it was admissible. There was evidence that Kaherl had been paying attention to Esther, that he caused his intention to marry her to be published and obtained a certificate of the publishment, that he went to her father's house with a carriage and took Esther and carried her away and was gone over night with her, and that when they returned they said they were married, and that in about a week from that time he moved her home, and that for ten years or more they lived together as husband and wife, and raised a family of children; and when it is charged that they were not in fact married, that she had consented to leave her home and live with a man as his wife without being married, it seems to us that

one of the first things which an inquiring mind would want to know would be what kind of a family she belonged to, and what kind of a home it was that she had left. Such evidence, if favorable, would tend to strengthen the presumption of her innocence, and, if unfavorable, to weaken it. We think the evidence was pertinent and legally admissible.

3. Exceptions are taken to the charge. It is claimed that if the evidence relating to the marriage certificate was legally admissible, the judge, in his instructions to the jury, authorized them to give it greater probative force than it was entitled to; that the jury must have understood from the charge that they were authorized to find that John Young, a clergyman of the Methodist church, issued the paper as an official certificate of the marriage, and that, upon that direct evidence, they might find a legal marriage. We can not find that in his charge the judge any where stated to the jury that they would be authorized to find a legal marriage upon the evidence of the certificate alone. He seems to have been very careful not to so instruct them. He instructed them that, if satisfied of the existence of the certificate, it was a piece of evidence for their consideration, the weight of which they must determine " in connection with all the evidence in the case." We do not mean to say that it would have been an erroneous instruction if the judge had told the jury that, if they were satisfied of the existence of the certificate, and that it was in the usual form and signed by one authorized to solemnize marriages,. they would be authorized to find a legal marriage from that evidence alone. It is a sufficient answer to the objection to say that the charge, as reported, does not contain such an instruction, and upon this point is quite as favorable to the plaintiffs as they were entitled to have it.

4. The jury found specially that William O. Kaherl and Esther A. Craig were lawfully married in 1854, as claimed by the defendants. The plaintiffs move to have the verdict set aside on the ground that it is not supported by the evidence. The motion can not be sustained. We think the evidence fully justified the finding.

5. The plaintiffs move for a new trial on the ground of newly

discovered evidence. This motion can not be sustained for two reasons. One reason is that the evidence in support of it was not taken within the time ordered by the court. Another reason is that the evidence, if it had been seasonably taken, is not sufficient in the opinion of the court to justify granting another trial.

*Motions and exceptions overruled.*
*Judgment on the verdict.*

Peters, C. J., Virgin, Libbey, Foster and Haskell, JJ., concurred.