**STATE of Maine**

v.

**Lawrence J. LEWIS.**

Supreme Judicial Court of Maine.

May 17, 1977.

Thomas E. Delahanty, II, Dist. Atty., Herbert Bunker, Jr., Deputy Dist. Atty., Auburn, Paul R. Gosselin, Legal Intern, for plaintiff.

Isaacson & Isaacson by Robert S. Hark, Lewiston, for defendant.

Before DUFRESNE, C. J., and POMEROY, WERNICK, ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

On the evening of January 20, 1974 Linwood Gott and Nathan Durgin were enjoying television at Gott's home in Mechanic Falls. At approximately 10:00 p. m., there was a knock at the door and when Gott opened to see who was there, three men, James Sirois, Michael Edwards and Emile St. Pierre, rushed into Gott's home and demanded money. While James Sirois held a sawed-off shotgun at Gott and Durgin, the other two intruders in true Hollywood style ripped the telephone off the wall and searched the victims and the house for valuables. The three robbers subsequently left with approximately $19.00 in currency.

On March 6, 1974 an Androscoggin County Grand Jury indicted the appellant, Lawrence J. Lewis, for the armed robbery of Gott and Durgin in violation of 17 M.R.S.A. § 3401–A.[1] At trial, the three accomplices in the robbery, Sirois, Edwards and St. Pierre, testified for the State and stated to the jury that the appellant had supplied them with the sawed-off shotgun, had driven them to and from Gott's home, and had received a share of the stolen money. Found guilty of armed robbery as charged

and sentenced to a state prison term of not less than 5 years and not more than 10 years, Lewis appealed to the Law Court on July 26, 1974, asserting four assignments of error.

On June 26, 1975, while his appeal was pending before the Law Court, the appellant filed a motion for a new trial based on newly discovered evidence. After remand of the case to the Superior Court for hearing and decision, the appellant's motion for new trial was denied on May 5, 1976. The appellant again appealed, asserting two additional points of error.

We have considered both appeals together and deny the same.

*Admissibility of exculpatory statement*

Detective Roland Morin of the Lewiston Police Department at the rebuttal stage of the trial was permitted to testify for the State over the appellant's objection that in March of 1974, in the course of a conversation in which the officer was seeking information relating to certain criminal activity in Lewiston as he had obtained from Lewis in the past, the appellant volunteered to the officer the information, that on the night of the Mechanic Falls armed robbery he was on Newbury Street in Auburn and that he didn't do it. The appellant contends that, since Detective Morin had not informed him of his Miranda rights so-called, it was error to admit the reference statement in evidence.

■ Volunteered statements of any kind are not barred by the Fifth Amendment to the Constitution of the United States, made applicable to the states through the Fourteenth Amendment. The privilege against self-incrimination is not invidiously infringed for failure to notify the person of his right to silence and to assure him of official scrupulous respect of its exercise, unless he has been "taken into

---

1. 17 M.R.S.A. § 3401–A (repealed by P.L., c. 499, effective May 1, 1976) provided:

"Whoever, if armed with a firearm, by force and violence, or by putting in fear, feloniously steals and takes from the person of another property that is the subject of larceny is guilty of robbery and shall be punished by imprisonment for any term of years. The imposition or execution of such sentence shall not be suspended and probation shall not be granted."

custody or otherwise deprived of his freedom by the authorities in any significant way." *Miranda v. Arizona*, 1966, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

■ The mere fact that the conversation between the appellant and the officer took place in a police vehicle does not per se give rise to the applicability of the Miranda rule. Mere presence of an individual in a police vehicle does not necessarily amount to a custodial detention. See *State v. Caha*, 1969, 184 Neb. 70, 165 N.W.2d 362.

■ It may be said that a police officer, by reason of the office itself, as the representative of governmental authority does carry some coercive influence, but any such psychological pressure emanating from an officer's authority alone is not sufficient under Miranda to create the "inherently coercive" environment requiring the several warnings which the Miranda case has established as necessary for the protection of the constitutional privilege against self-incrimination. To trigger the need for the Miranda warnings there must be a setting in which the individual is in police custody, such as under arrest or under some other form of police restraint in some significant way. *State v. Inman*, 1976, Me., 350 A.2d 582, 597; *State v. Travis*, 1968, 250 Or. 213, 441 P.2d 597.

■ Thus, Miranda protects an accused against self-incrimination by excluding from the evidence any statement made by him *during periods of custodial interrogation* unless the warning safeguards as established in Miranda have been complied with. *State v. Inman*, supra, at 597.

■ Police interrogation can qualify as custodial interrogation within the meaning of the Miranda concept without a formal arrest and where the interrogation takes place in an area other than at a police station. *State v. Inman*, supra, at 597.

But, where there is no formal arrest, the circumstances surrounding the interrogation and the atmosphere in which it takes place must be examined for the purpose of determining whether the person interrogated is in a custodial interrogation situation. Such is essential to test whether the person is being questioned during a period when his freedom of movement is impinged in any significant way, this being the foundational basis requiring the police to give the four-fold Miranda warnings. *People v. P.*, 1967, 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255.

■ The facts of each particular case must be closely scrutinized to appreciate whether the line has been crossed between a "general investigation" which law enforcement personnel are duty bound to conduct in traditional crime detection work and a "custodial interrogation" within the Miranda principle. *State v. Inman*, supra, at 597, 598; *United States v. Montos*, 1970, 5 Cir., 421 F.2d 215, 223, cert. denied 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532.

■ In the present case, Detective Morin testified that he met with the appellant in his police cruiser merely to obtain information on local criminal activity, and that he was not concerned with investigating the Mechanic Falls robbery. There is no evidence in the record that the appellant was under any kind of restraint from the police officer, or that he was not free to leave the cruiser at any time. In fact, during their discussion, the appellant asked Detective Morin whether he would be willing to testify in his behalf as a character witness at his robbery trial.[2] This suggests that the appellant's relationship with the police officer was completely amicable and negates that he was under police detention. We hold that the admission of the appellant's statement in evidence was not error, since the presiding Justice on this record was justified in concluding that the appel-

---

2. Although this testimony came to light only on examination of the officer in the absence of the jury and was not resubmitted later to the jury for their consideration, the presiding Justice

was free to consider it in his determination of the admissibility of the appellant's statement to the detective.

lant was not under custody within the meaning of *Miranda v. Arizona, supra.*

Even if the trial Justice by express finding had determined that the appellant was in police custody at the time of the reference statement, his ruling that the statement was admissible in evidence would still have been correct. Detective Morin testified that the appellant unexpectedly brought up the subject of the Mechanic Falls robbery, while he was inquiring about unrelated matters. After the appellant informed the detective of his alibi for the robbery, the officer resumed talking about the previous subject of the conversation. From such undisputed testimony the presiding Justice could reasonably reach the conclusion that the appellant's statement was purely voluntary on his part and not in response to police interrogation, and, thus, was exempt from *Miranda's* exclusionary rule. See *Miranda v. Arizona, supra; State v. Taylor,* 1975, Me., 343 A.2d 11, 19; *State v. Lafferty,* 1973, Me., 309 A.2d 647, 655.

### Presence of shotgun at trial

The appellant's next point on appeal concerns the State's unsuccessful attempt to admit a shotgun in evidence. During the trial, the prosecution witness, James Sirois, testified that the appellant had supplied him and his two accomplices with the shotgun used to commit the Mechanic Falls robbery. The State then attempted to have admitted in evidence a shotgun which, it contended, was the weapon furnished by the appellant to the three robbers. The presiding Justice, however, excluded the shotgun on the ground of improper authentication.

The appellant now maintains that the presiding Justice committed reversible error by failing to instruct the jury to disregard the presentation of the shotgun as evidence. The appellant concedes, however, that he neglected to object to the omission in the trial Justice's charge in violation of Rule 30(b) of the Maine Rules of Criminal Procedure. We must accordingly reject such claim of error, unless the omission in the charge constituted obvious error substan-

tially affecting the rights of the appellant pursuant to Rule 52(b). See *State v. McKeough,* 1973, Me., 300 A.2d 755, 757; *State v. Boisvert,* 1967, Me., 236 A.2d 419.

At the close of the evidence, the presiding Justice charged the jury as follows:

"Now what is the evidence in the case from which you will make your findings of fact? Primarily, as in most cases, it is the testimony of the witnesses . . . . . There are also *exhibits which have been admitted into evidence, which are evidence for you to consider.*" (emphasis added)

The presiding Justice also informed the jurors that they would have available "in your jury room the *exhibits which have been admitted into evidence* of which there are three" (emphasis added). We believe that the above instructions effectively informed the jurors that in reaching their verdict they could consider the exhibits which had been admitted in evidence, but that they should disregard exhibits, such as the shotgun, which had not been admitted in evidence. We accordingly hold that the presiding Justice's failure to give an explicit cautionary instruction concerning the shotgun did not amount to obvious error within the meaning of Rule 52(b).

### Speedy trial

The appellant's next claim of error is that he was denied his constitutional right to a speedy trial. In order to determine whether a defendant has been deprived of this right, it is necessary for the courts to engage in a delicate balancing process, in which all relevant factors respecting the conduct of both the prosecution and the defendant are to be evaluated. See *Barker v. Wingo,* 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. The four factors identified in *Barker* for consideration with such other circumstances as may be relevant are: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *State v. Carlson,* 1973, 308 A.2d 294, 298.

The first factor to be considered—the length of the delay—is unfa-

vorable to the appellant's allegation of a speedy trial violation. The interval between the appellant's arrest on January 23, 1974 and the commencement of his trial on July 22 of the same year constituted a delay of only six months. Our research reveals that delays of greater duration have withstood the test of judicial scrutiny. See, e. g., *Barker v. Wingo, supra* (5 years); *United States v. Jackson,* 1966, 4 Cir., 369 F.2d 936 (15 months); *State v. Carlson, supra* (13 months); *State v. O'Clair,* 1972, Me., 292 A.2d 186 (12 months); *State v. Brann,* 1972, Me., 292 A.2d 173 (9 months).

The validity of the appellant's argument is further diminished by an evaluation of the reasons for the delay. The appellant's case was originally scheduled for trial on March 25th. But, on March 21st, the appellant's newly appointed counsel requested and received a continuance of the trial date in order to prepare a defense and to file pretrial motions. The trial date was subsequently set for June 17th, but, due to the unavailability of the presiding Justice, it became necessary to continue the trial to July 22nd. Thus, the record reveals that a substantial part of the six months delay was attributable to either the appellant's own actions or to circumstances beyond the control of the prosecution; such facts substantially deflate the appellant's claim of a speedy trial violation. See *Barker v. Wingo, supra; United States v. Jackson, supra.*

As to the appellant's assertive conduct respecting his right to a speedy trial, we note that his first move to secure an early hearing of his case was made on April 18, 1974, some three weeks after he had obtained discovery of the State's evidence. The Court responded quickly to the appellant's motion by hearing the parties thereon on April 24, 1974 and setting the trial date on June 17, 1974. It was only the trial Justice's unavailability that caused the final postponement to July 22, 1974.

Assuming the appellant sufficiently articulated his request for a speedy trial, the instant record fails to demonstrate that he was prejudiced by the short delay that subsequently occurred. He claims that the change in trial dates from June 17 to July 22, 1974 resulted in his inability to secure the presence of an alibi witness who left the jurisdiction shortly before the trial. We disagree.

This alleged deprivation of alibi evidence must be considered in the context of the State's case which was supported by three eye-witness accomplices, coupled with the fact that the record discloses no effort by the appellant to seek such alibi evidence and compel its production. He could have subpoenaed the witness for trial or for the taking of his deposition either in the State prior to his departure, or outside the State after he had left, pursuant to the provisions of Rule 17, M.R.Crim.P. and the provisions of 15 M.R.S.A., §§ 1411–1415, the Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings. Viewed in this light, the appellant has failed to show prejudice and his claim of deprivation of his constitutional right of speedy trial is without merit.

### Sufficiency of Evidence

The appellant's final contention in his appeal from conviction is that the jury's verdict is contrary to the weight of the evidence. He says that the credibility of the three prosecution witnesses was highly questionable, while that of his alibi witnesses was unimpeachable. The jury, so the appellant further maintains, should have accordingly disregarded the testimony of the prosecution witnesses and found appellant innocent.

It is well established, however, that questions of credibility are reserved for the determination of the jury (*State v. Trask,* 1966, Me., 223 A.2d 823), and that the responsibility of the appellate court is limited to determining whether, in view of all the testimony, there was believable evidence from which the jury was warranted in believing beyond a reasonable doubt that the defendant was guilty. *State v. Mann,* 1976, Me., 361 A.2d 897, 906; *State v. Goldman,* 1971, Me., 281 A.2d 8, 12. After reviewing the record, we hold that the jury was justified in returning a guilty verdict.

In the appellant's appeal from conviction, the entry will be

Appeal denied.

WEATHERBEE, J., sat at argument and participated in consultation, but died prior to the adoption of this opinion.

DELAHANTY, J., did not sit.

## APPEAL AS TO MOTION FOR NEW TRIAL BASED ON NEWLY DISCOVERED EVIDENCE

A. Recantation of Witness Trembly

The appellant claims that he is entitled to a new trial because of the recantation of Ronald Trembly, a State's witness at trial, and that it was error for the presiding Justice to rule otherwise.

At trial Trembly testified that he had encountered the appellant a few days after the Mechanic Falls robbery. Trembly stated that on that occasion the appellant handed him a sawed-off shotgun and told him to "hide it for him because the cops were looking for it and they thought he had it." Some eleven months after the trial, Trembly signed an affidavit in which he maintained that he had perjured himself during the trial, asserting under oath that he had obtained the shotgun from one Michael Cloutier rather than from the appellant.

█ In *State v. McDonough,* 1976, Me., 350 A.2d 556, we reiterated the five prerequisites for the granting of a new trial on the basis of newly discovered evidence. A new trial should not be granted on this ground, unless

"(1) the evidence is such as will probably change the result if a new trial is ordered; (2) it has been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it is material to the issue; (5) it is not merely cumulative or impeaching, unless it is clear that impeachment would have resulted in a different verdict." Id. at 560.

After considering the testimony presented at the hearing, the presiding Justice determined that the appellant had failed to satisfy the first prerequisite expressed in *McDonough,* finding that the recantation of Ronald Trembly would probably not result in a different verdict if the case were retried. This determination by the presiding Justice is one of fact and is binding on the appellate court unless clearly erroneous. *State v. Sawyer,* 1974, Me., 314 A.2d 830.

█ In the instant case, we must agree with the presiding Justice that Trembly's testimony did not proffer such qualitative evidence as would probably change the result upon a retrial. Indeed, it was unconvincing and entitled to little weight. At first, Trembly could not remember whether he had told the truth at the appellant's trial. He did not recall receiving the shotgun from Lewis. Then, on cross-examination, he ventured to say that he thought he had obtained it from Michael Cloutier. His positive assertion on redirect examination that it was Cloutier and not Lewis who had given him the shotgun did not clothe his statement with absolute verity which the presiding Justice could not downgrade in view of the appellant's previous vacillation.

Furthermore, the record reveals that Trembly was not a major prosecution witness at the appellant's trial. Trembly's testimony merely established that the appellant possessed a sawed-off shotgun shortly after the Mechanic Falls robbery and that the appellant asked him to dispose of the weapon for him. In contrast, the three accomplices in the robbery, Sirois, Edwards and St. Pierre, presented testimony which directly and unequivocally implicated the appellant in the crime. They testified that the appellant had supplied them with the shotgun used in the perpetration of the robbery, had driven them to and from Gott's home in Mechanic Falls and had received a share of the stolen money. We believe that the testimony of these three witnesses would probably result in a guilty verdict, even if upon retrial Trembly's recantation were submitted to the jury.

█ The mere possibility or chance that upon a retrial Trembly's recantation *might* induce a jury to reach a different verdict is not a sufficient basis for the grant of a new

trial; in order to support a motion for a new trial based on newly discovered evidence, it must be made to appear that, in the light of the overall testimony, new and old, another jury *ought to give* a different verdict; there must be a *probability* that a new trial would result in a different verdict. *State v. Terroni,* 1970, Me., 270 A.2d 75, 78; *State v. Irons,* 1941, 137 Me. 294, 299, 18 A.2d 798, 801; *State v. Stain,* 1890, 82 Me. 472, 490–491, 20 A. 72, 77.

We accordingly hold that the presiding Justice's denial of the appellant's motion for a new trial was not clearly erroneous and that Lewis takes nothing from this point of appeal.

B. Admissibility of transcript of tape-recorded conversation

During the hearing on the appellant's motion for a new trial, Peter Garcia, a former Assistant County Attorney, testified that in January of 1974 he had met with Ronald Trembly and his attorney in order to obtain information on local criminal activity. According to the prosecutor, the conference was tape-recorded and a transcript of the tape was subsequently prepared at his direction. At the close of Attorney Garcia's testimony, the prosecution offered and the presiding Justice allowed the transcript in evidence over objection.

 The appellant's initial contention is that the transcript constitutes inadmissible hearsay, and, consequently, that the presiding Justice erred in admitting the document in evidence. Our rules of evidence, in effect at the time of the hearing on the motion for a new trial,[3] define "Hearsay" as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c) of the Maine Rules of Evidence.

In the present case, the presiding Justice stated that he would admit the transcript in evidence

"solely for the purpose of what it discloses as to either corroborate or contradict what the witness, Ronald Trembly, and Mr. Hamilton and Mr. Garcia, as to their testimony as to what was said at the hearing and not to be used in any way as to whether or not the statements contained herein are true."

It would appear from the presiding Justice's ruling that the transcript did not come within the meaning of hearsay evidence as defined by Rule 801(c), *supra;* the document was not introduced to prove the truth of the matter asserted therein.

In any event, an examination of the certification order made part of this record demonstrates that the presiding Justice based his decision solely on the testimony presented during the hearing, and that he was not influenced in any manner by the admission of the transcript. We must accordingly disregard the error, if any, in the admission of the transcript, as the document did not affect any substantial rights of the appellant. See M.R.Crim.P. 52(a).[4]

 The appellant also maintains that the reception of the transcript in evidence violated Maine's version of the "Best Evidence" rule (M.R.Evid. 1002), as the State failed to discharge its burden of producing the original tape-recording. However, a party may introduce secondary evidence of the contents of a writing, recording or photograph if "[a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; . . ." M.R.Evid. 1004(1).

All preliminary matters which must be established to make secondary evidence admissible are questions of fact for the court and the sufficiency of the proof of such preliminary facts as well as the ultimate issue of the admissibility of the secondary evidence is subject to the sound discretion of the trial Justice, and his decision is re-

---

3. The hearing on the motion for new trial took place on March 19, 1976 after the Maine Rules of Evidence became effective on February 2, 1976.

4. Rule 52(a) Harmless Error. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

viewable only for abuse of discretion. *St. Croix Company v. Seacoast Canning Company,* 1916, 114 Me. 521, 96 A. 1059; *Bain v. Walsh, Administratrix,* 1892, 85 Me. 108, 26 A. 1001; *Inhabitants of Camden v. Inhabitants of Belgrade,* 1886, 78 Me. 204, 3 A. 652.

In the present case, Attorney Garcia testified that the practice in the County Attorney's Office at the time of the conference was to have tape-recordings transcribed and then to return the cassettes to general circulation. He stated, moreover, that, at the time of the conference with Trembly, he had no reason to believe that the recording would be involved in future litigation. A search to locate the tape-recording in the County Attorney's Office proved unsuccessful. The evidence was sufficient to support the trial Justice *in his ruling* that the tape-recording was not lost or destroyed in bad faith. There was no abuse of discretion in admitting the transcript as secondary evidence.

On the motion for new trial, the entry will be

Appeal denied.

All Justices concurring.

DELAHANTY, J., did not sit.

GODFREY, J., joins in this opinion only in so far as it relates to the appeal from the denial of the motion for new trial. He did not participate in the main appeal.