STATE of Maine

v.

Leo TANGUAY.

Supreme Judicial Court of Maine.

July 25, 1978.

Thomas E. Delahanty, II, Dist. Atty., R. Barrie Michelsen, Asst. Dist. Atty., Auburn, Patrick F. Donnellan (orally), Legal Intern, for plaintiff.

Thomas M. Mangan, Lewiston (orally), for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

This appeal follows entry of judgment on a jury verdict finding the appellant, Leo Tanguay, guilty of simple assault (17–A M.R.S.A. § 207). Appellant claims error in the admission both of incriminating statements and of the testimony of a prosecution witness who had allegedly violated a sequestration order. He further claims that the verdict was not supported by the evidence.

We deny the appeal.

The State presented evidence to show the following. On September 3, 1976 appellant and several friends went to the Royal Hotel in Lewiston. While there, appellant saw the complainant in this action. At one point in the evening a heated discussion was entered into between the two. Following the discussion, appellant, the complainant, and at least one of appellant's friends went outside. There was testimony at the trial that an unidentified friend of appellant stepped between appellant and the complainant. The complainant testified that he then passed out and remembered nothing after that until he came to, sitting on the sidewalk, badly injured.

The State also presented the testimony of a police officer who had spoken to appellant the day after the incident. The officer testified that he had been on routine patrol when he spotted appellant. Having seen the reports for that day, the officer knew that appellant was one of several potential suspects in the assault. The officer then invited appellant to sit in his cruiser for a few minutes and asked appellant for "*his side of the story.*" Appellant stated that he had hit the complainant in the mouth before the complainant had had a chance to hit him. At no point during this process did the officer read appellant *Miranda* warnings. Appellant was arrested several days later.

■ Appellant raises as his first point on appeal the officer's failure to give a *Miranda* warning during the talk in the cruiser. Appellant contends that a custodial interrogation took place and that the failure to give warnings rendered all statements made in the cruiser inadmissible. A preliminary hearing was held on this issue at the trial. This point was properly saved in the court below.

In *State v. Lewis,* Me., 373 A.2d 603 (1977), we examined the question whether interrogation of a defendant in a police cruiser triggered the necessity for *Miranda* warnings. We there stated:

> *The mere fact that the conversation between appellant and the officer took place in a police vehicle does not per se give rise to the applicability of the Miranda rule. Mere presence of an individual in a police vehicle does not necessarily amount to a custodial detention. Id. at 607.*

We stated further that:

> *The facts of each particular case must be closely scrutinized to appreciate whether the line has been crossed between a "general investigation" which law enforcement personnel are duty bound to conduct in traditional crime de-*

*tection work and a* "custodial interrogation" *within the Miranda principle. Id.*

The circumstances in this case are clearly sufficient to uphold the trial court's determination that *Miranda* warnings were not required. There was evidence below that appellant had known the investigating officer for some years. It is also clear that he voluntarily sat in the police cruiser after the invitation to do so by the officer. Moreover, there was no evidence that appellant's freedom was restricted in any way. Nothing in the record suggests that appellant could not have left the cruiser whenever he wished. Finally, the record supports a conclusion that no exhaustive interrogation took place. It appears merely as though the discussion in the cruiser was more in the nature of a casual conversation. The line between *"general investigation"* and *"custodial interrogation"* has not been crossed.

Appellant next seeks to attack on different grounds the presiding justice's admission into evidence of the statements made in the cruiser. At trial, after the Court had already held the hearing on the *Miranda* warnings and had determined that the statements were not inadmissible on that ground, appellant objected to the statements as hearsay. The objection was overruled and the statements admitted as an admission of a party-opponent under M.R. Evid. 801(d)(2)(A). No further objection was made to the admission of the statement.

Appellant first contends that the statement is hearsay and that M.R.Evid. 801(d)(2)(A) is inapplicable in a criminal case. If such a statement is admissible, not because of its inherent trustworthiness, but because *"a party cannot object to his failure to have a chance to cross-examine himself."* R. Field and P. Murray, *Maine Evidence* § 801.5 (1976), then the rationale for admissibility fails in the criminal context where a defendant need not take the stand appellant argues.

1. Appellant argues that the statements are either confessions or admissions which are so significantly incriminating as to merit a voluntariness hearing. *See Michaud v. State,* 161 Me. 517, 530, 215 A.2d 87, 93–94 (1965). The

While there may well be problems of admissibility generated by the attempt to introduce an admission made by a criminal defendant into evidence, hearsay is not one of them. *See State v. Burnham,* Me., 350 A.2d 577, 580 (1976).

Appellant next urges that if the statement is not hearsay, it is still inadmissible because no showing was ever made of its voluntariness.[1] No objection on the basis of involuntariness was ever voiced below, however, Appellant now contends that the trial justice was required to initiate a hearing on voluntariness on his own.

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that the United States Constitution *"does not require a voluntariness hearing absent some contemporaneous challenge to the use of the confession." Id.* at 86, 97 S.Ct. at 2506. We note, however, that our own decision in *State v. Collins,* Me., 297 A.2d 620 (1972) expanded the minimum protections required by *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 918 (1972) in a voluntariness hearing. Thus, we held that the State bears the burden of proving voluntariness beyond a reasonable doubt rather than by a mere preponderance. We felt obliged in *Collins* to go beyond the minimum protections in *Lego v. Twomey, supra,* because the public policy of the State of Maine required not merely the *"deterrence of lawless conduct by police and prosecution"* but also strong consideration of the value

. . . *of safeguarding* " '. . . *the right of an individual, entirely apart from his guilt or innocence, not to be compelled to condemn himself by his own utterances.' " State v. Collins, supra* at 626, *quoting Lego v. Twomey,* 404 U.S. *supra* at 491, 92 S.Ct. 619 (Brennan, J., dissenting).

State concedes that admissibility of the statements *"should not rest on the ground that they were merely admissions not subject to any consideration of voluntariness."* We agree.

**916**

While we reaffirm the principles espoused in *Collins,* we do not thereby feel obliged to require a trial justice to hold a hearing on voluntariness where a defendant has made *no* attempt to bring this issue to the justice's attention. While we have long recognized the need for a hearing on the issue of voluntariness, *e. g. State v. Warner,* Me., 237 A.2d 150, 165 (1967), this Court has also long recognized the necessity of saving error for appellate review. Such a rule allows the trial justice the opportunity to rule initially on an objection, oftentimes disposing of the issue without the need for subsequent appellate scrutiny. This policy of judicial economy will not be overturned even in the face of the grave constitutional concerns confronting us here. Accordingly, appellant cannot claim here that the failure to hold a voluntariness hearing was reversible error where he failed to bring the issue to the trial justice's attention. We find no error was committed.

■ Appellant's final contention in regard to the incriminating statements is that the statements were the only evidence tending to show that a crime had been committed. Appellant argues that an uncorroborated confession alone is insufficient to support a conviction. This argument fails, however, since there was other evidence, albeit circumstantial, which could be deemed to show the commission of the offense for which appellant was convicted.

■ The next portion of appellant's argument focuses on the contention that the rebuttal testimony of a prosecution witness should not have been admitted, since the witness was alleged to have violated the sequestration order imposed by the Court at the beginning of the trial. Even assuming that testimony is inadmissible if a witness violates a sequestration order, a point which we are not prepared to concede here, appellant has not demonstrated reversible error. There is no indication before us that the witness did indeed violate the order. Moreover, appellant failed to advise the presiding justice that the alleged violation had occurred. Finally, appellant demonstrates no prejudice elevating this error, if any, to the level of manifest error.

■ Appellant's final points on appeal concern the sufficiency of the evidence. Suffice it to say that the arguments here are not persuasive.

The entry must be:

Appeal denied.

Judgment affirmed.

DELAHANTY, J., did not sit.