STATE OF MAINE　　　　　　　　　SUPERIOR COURT
PENOBSCOT, SS.　　　　　　　　　Docket No. CR-02-828

FILED & ENTERED
SUPERIOR COURT

MAR 24 2003

PENOBSCOT COUNTY

State of Maine

v.　　　　　　　　　　　　　　　　　Order (Motion to Suppress)

DONALD L. GARBRECHT
LAW LIBRARY

MAR 2003

Katie L. Rosenberg

　　　　Hearing on the defendant's motion to suppress was held on February 7, 2003. The defendant was present with counsel. Through her motion, the defendant seeks to suppress statements she made to a police detective on September 19, 2002.

　　　　On that date, Bangor Police Detective Beaulieu drove to the defendant's residence because he wanted to talk with her in connection with an ongoing investigation into a possible theft of funds from the medical office where the defendant had been employed. Beaulieu had not had any contact with the defendant prior to September 19. Beaulieu, who was wearing plainclothes, went to the front door. The defendant answered the door. Beaulieu introduced himself as a police officer and told the defendant that he would like to talk with her. The defendant described his demeanor as "friendly." Beaulieu saw that another person was present at the house and asked the defendant if she would prefer to talk in the police car. In fact, the defendant preferred not to carry on the conversation in front of others, and so she willingly agreed to go to Beaulieu's vehicle: she testified that she had "no problem" with this arrangement.

　　　　The two then went to Beaulieu's car, which was parked in front of the defendant's residence and was in full view of the residence. Beaulieu got into the driver's seat, and the defendant got into the front passenger seat. The windows were rolled up, but the defendant was not restrained or prevented from getting out. The car was running during the interview so that the air conditioner could be run. Prior to the time either of them made any statements, Beaulieu turned on a tape recorder. He then said, "OK Katie, I

1

want to tell you that you're not under arrest, and not going to be arresting you. I've just got to talk to you about some stuff that's going on but a lot of times when we talk to people they think they're being arrested, you're not being arrested, just want to let you know that. I like to let people know up front." State's exhibit 1 at p.1. The defendant then acknowledged this statement. Beaulieu proceeded to ask questions about the defendant's former employment at the medical office that had reported the theft, and Beaulieu advised the defendant very early in the conversation that he wanted to talk with her about "some checks from Dr. Curtis' office." *Id.* p.2. Roughly one-third of the way into the 20 minute interview, Beaulieu became more accusatory, and the defendant said, "Right. I understand that [that Beaulieu had a number of checks that were evidence of a possible theft] but do I need a lawyer? I mean should I get...?" *Id.* p.4. Beaulieu responded, "I'm asking you for an explanation. It's obvious what's going on. I'm asking you to tell me why did you do this stuff? I mean give me an explanation to take to somebody and say this is why she did it." *Id.* The defendant ultimately admitted that she had taken funds without authority. Beaulieu did not inform the defendant of her *Miranda* rights at any time during their contact on September 19. After the interview in the car was completed, the defendant gave Beaulieu some documents at his request, and he then left.

The defendant argues that the interview conducted by Beaulieu was custodial and, because he did not advise her of her *Miranda* rights, should be suppressed.

A person is deemed to be in custody for fifth amendment purposes, thereby triggering rights under *Miranda*, if that person is under arrest or restrained to a degree associated with formal arrest. *State v. Higgins*, 2002 ME 77, ¶ 12, 796 A.2d 50, 54. Here, the defendant was not under arrest during the interview. The court also finds that a reasonable person in the defendant's circumstances would have felt that she was "at liberty to terminate the interrogation and leave." *Id.*, ¶ 13, 796 A.2d at 54 (internal punctuation and citation omitted). In order to assess the perceptions of a reasonable person in that regard, the court must consider a number of factors that bear on the totality of the circumstances of the interview. *Id.* Here, Beaulieu interrogated the defendant in a police car that was parked immediately in front of her house. For her own reasons, she agreed to talk with Beaulieu in the car rather than in the house. Thus, the setting of the

2

interview was of the defendant's choice. Further, the fact that the interview occurred in a police car by itself does not create a custodial circumstance. *State v. Lewis*, 373 A.2d 603, 607 (Me. 1977).

Beaulieu initiated contact with the defendant, but the court finds that she agreed to speak with him. During the course of the interview, it would become clear to a reasonable person, because of the defendant's admissions of misconduct, that there meaningful evidence of criminality. However, at the outset of the interview, Beaulieu expressly advised the defendant that she was not under arrest and that he was "not going to be arresting" her. State's exhibit 1 at p.1. Thus, although a reasonable person would understand that her inculpatory statements provided direct evidence of guilt, that person also would have been assured that she was not going to be arrested, notwithstanding those admissions. The evidence does not reveal any statements or conduct by the defendant indicating that she expected to be arrested. She never attempted to leave or indicated that she wanted to terminate the conversation. (In fact, she was not arrested.) The defendant was nervous, and she may have been emotional later on in the interview, but she was also responsive and alert.

The interview was conducted by one officer. No others were present. Although Beaulieu's vehicle was plainly a police car, Beaulieu himself was not wearing a uniform. There is no evidence of any physical restraint, physical contact or other actions that could be viewed as intimidating or coercive. The air conditioner in the car was running during the interview, and the court infers from this fact that the environment was comfortable. Beaulieu's questions of the defendant were clearly accusatory. That she was the focus of Beaulieu's investigation is not sufficient to create a custodial setting. *Higgins*, 2002 ME 77, ¶ 16, 796 A.2d at 55. The interview was relatively short and to the point.

The defendant did not request counsel. During the taped interview, she raised the issue of counsel. Beaulieu did not respond, and the defendant did not raise the issue again. At the motion hearing, the defendant testified that when the two were talking in the doorway to her residence, she asked about an attorney there. She then stated that during the taped interview, she asked for an attorney. In fact, the transcript makes clear that she did not request counsel. Rather, she asked only *if* she needed one. Her testimony regarding the interview therefore must be seen as an overstatement, and, in light of

3

Beaulieu's testimony that the subject never came up prior to the taped interview, the court therefore rejects her companion testimony that she mentioned the question of counsel even before she and Beaulieu got into the car.

For these reasons, the court concludes that the state has established by a preponderance of the evidence that the defendant was not in custody when Beaulieu interrogated her.

The court also finds beyond a reasonable doubt that the defendant's statements were made voluntarily.

The entry shall be:

For the foregoing reasons, the defendant's motion to suppress is denied.

Dated: March 23, 2003

_____
Justice, Maine Superior Court

4

STATE OF MAINE
PENOBSCOT COUNTY SUPERIOR COURT

STATE OF MAINE V. KATIE ROSENBERG
CR-2002-828


DISTRICT ATTORNEY:

MICHAEL P. ROBERTS, DEPUTY DISTRICT ATTORNEY
OFFICE OF THE DISTRICT ATTORNEY
97 HAMMOND ST
BANGOR, ME 04401


DEFENSE COUNSEL:

MARIE E. HANSEN, ESQ.
WILLEY LAW OFFICES
PO BOX 924
BANGOR, ME 04402-0924