STATE of Maine

v.

David CONWELL.

Supreme Judicial Court of Maine.

Oct. 23, 1978.

William P. Donahue, Dist. Atty., Eric B. Cote (orally), Asst. Dist. Atty., Alfred, for plaintiff.

Childs, McKinley, Emerson & Rovzar by Roderick R. Rovzar (orally), Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

DELAHANTY, Justice.

After a jury trial in Superior Court, York County, the defendant was convicted of aggravated assault, 17-A M.R.S.A. § 208, in connection with the beating of his two-year-old illegitimate son. On this appeal, the defendant asserts 1) that certain photographs of the beaten child were overly prejudicial and therefore should not have been admitted into evidence, 2) that medical testimony concerning possible prior injuries to the child was irrelevant and should have been excluded, and 3) that the evidence introduced at trial was insufficient to support the jury's verdict.

We deny the appeal.

At the trial, the jury was required to resolve two conflicting versions of the event in question. The mother of the child, Claire Mondor, testified that on January 14, 1977, she was awakened late at night by the sound of the defendant, with whom she had been living for some time, and his friends entering the house. From her bedroom, she saw the defendant together with the child in the second floor hallway and heard the defendant's footsteps as he descended the stairs with the child. She heard more footsteps after the pair had reached the first floor, and then she heard a door close followed by the screams of her son. Shortly thereafter, Ms. Mondor got out of bed and met the defendant, who was holding the child, at the top of the stairs. The child was bleeding profusely from a cut near his eye and had a swollen lump on his forehead

which defendant was attempting to ease by pressing some ice wrapped in a towel against it. The defendant explained that he had fallen on the stairs while carrying the child. Soon thereafter, the mother discovered blood on the family's clothes dryer and on a nearby wall. The dryer was located in a shed adjacent to the kitchen. A door separated the kitchen from the shed.

The theory of the prosecution, then, was that the defendant had taken the child down the stairs, walked into the kitchen, opened the door to the shed, closed it, assaulted the child, and then returned to the second floor.

The defendant's version at trial was consistent with the statement he made to Ms. Mondor shortly after the incident. He testified in his own defense that he came home late at night together with friends, that he looked in on his son, and, noticing that he was awake, decided to take him downstairs to feed him. Halfway down the stairs, the defendant tripped on his bootlace and pitched forward struggling in an effort not to fall on the child. After the fall, the defendant carried the bleeding child into the kitchen and through the door into the shed where, after wiping some of the blood from his hands, the defendant wrapped a towel around an icicle and pressed it to the child's forehead. That done, he carried the child back into the kitchen and up the stairs to the second floor. The defendant's version was corroborated in part by Gus Laverriere, a friend of defendant, who testified that he was lying on the living room couch and observed the defendant and his son fall down the stairs. The mother, on the other hand, testified that she did not hear the defendant trip on the stairs.

The defendant admitted that on the morning after the incident he counseled against taking the child to the hospital. The mother waited four days before getting in touch with the authorities.

The medical testimony at the trial was offered by Dr. Lyman Page who had examined the child on the 18th of January, 1977. As the State puts it in its brief, Dr. Page "was unable to arrive at a specific cause of the injuries but suggested several possibilities including physical blows to the victim." The jury returned a guilty verdict, and this appeal followed.

## I.

Four days after the beating was alleged to have taken place, Claire Mondor contacted a State agency which turned the matter over to the police. Detective Morin of the Biddeford Police Department took two photographs of the injured child which were later admitted into evidence over a timely objection. The defendant now claims, as he did at trial, that the probative value of the photographs was "substantially outweighed by the danger of unfair prejudice" to him. M.R.Evid. 403.

■ It is settled law in this jurisdiction that the admissibility of photographs is left largely to the discretion of the presiding Justice. *State v. Boucher*, Me., 376 A.2d 478 (1977); *State v. Bazinet*, Me., 372 A.2d 1036 (1977); *State v. Sargent*, Me., 361 A.2d 248 (1976); *State v. Stackpole*, Me., 349 A.2d 185 (1975); *State v. Berube*, Me., 297 A.2d 884 (1972); *State v. Rollins*, Me., 295 A.2d 914 (1972); R. Field & P. Murray, Maine Evidence § 403.5 (1976).

■ The photographs in question depict a young child with reddish marks under one eye and a dark bruise on the inside corner of another. In clarifying the position of the bruises, the photographs served to illustrate the doctor's testimony and, further, may well have been a valuable aid to the jury in answering the critical question of whether the injuries were purposefully inflicted or the result of an accidental fall. While the photographs are unpleasant to view, they are not gruesome; and we are satisfied that the presiding Justice did not abuse his discretion in allowing them to be admitted into evidence.

## II.

Dr. Page, a pediatrician who had examined the child on January 18, was called by the State and testified regarding the observations he made on that day. In addition

to describing the injuries allegedly inflicted by the defendant on the 14th, the doctor mentioned that he had noticed certain bald spots on the child's head. Defense counsel entered a general objection, and the presiding Justice allowed the doctor to continue his description of the spots "without making an attribution of their origin." Subsequently, the doctor was asked what could have caused the spots. Defense counsel then renewed his general objection which was overruled on the strength of the State's representation that it would connect the doctor's opinion with evidence to be introduced at a later time. The doctor then testified that he could not be certain what the cause of the bald spots was, but he offered a number of possibilities one of which was that the hair could have been pulled out.

■ We are now asked to hold that the doctor's testimony regarding the bald spots was irrelevant and unduly prejudicial in that it tended to suggest a prior history of child abuse on the part of the defendant. Although the State failed subsequently to introduce evidence connecting the defendant to the bald spots—an omission of which we heartily disapprove in light of the State's earlier representation—it is also clear that defense counsel never specified the ground of his objection,[1] never moved to strike the evidence, never moved for a mistrial, and never requested that the jury be given a curative instruction. In short, the defendant failed to afford the presiding Justice sufficient opportunity to correct the error here alleged. Our conclusion must therefore be that the matter was not "appropriately saved for appellate scrutiny." *State v. Pomerleau*, Me., 363 A.2d 692, 697 (1976). Accordingly, the alleged error can form the basis for reversal only if it meets the "manifest error-serious injustice" standard. *Id.*

■ Turning to the testimony in question, we note that the doctor merely *suggested* the *possibility* that the hair *could* have been pulled out. A more tentative pronouncement would be difficult to conceive. Furthermore, no one testified, or even intimated, that the defendant had pulled out the hair. Thus, the defendant's assertion that the doctor's testimony was prejudicial to him rests not on the record but on the thin reed of speculation. We find *no manifest error*.

### III.

■ Pursuant to M.R.Crim.P. 29(a), the defendant moved for a judgment of acquittal after the prosecution had rested its case and again at the close of his own case. Both motions were denied. The presiding Justice concluded that there was sufficient evidence to sustain a guilty verdict if the jury elected to believe the mother's story.[2]

---

1. We have repeatedly emphasized the importance of particularizing the grounds for an objection to the admission of evidence. *Mattson v. Mattson*, Me., 376 A.2d 473 (1977); *State v. Kelley*, Me., 357 A.2d 890 (1976); *State v. Thibodeau*, Me., 317 A.2d 172 (1974). *See also* M.R.Crim.P. 51; M.R.Evid. 103(a)(1); H. Glassman, 3 Maine Practice § 51.2 (1967).

2. In denying the defendant's motion for a judgment of acquittal at the close of all the evidence, the presiding Justice explained his position as follows:

    I think largely it's going to depend on who they believe and what they believe. There is enough to infer that the child may, by whatever means, have suffered a violent injury to the upper facial area and from where and how that injury was sustained and the circumstances elicited by the State. Nothing was heard, no crying was heard, until the door to the shed opened and closed, and then the cries came from the vicinity of the laundry room or shed. The defendant came back up the stairs already having procured some kind of towel or cloth, and had an icicle, I think, at that time. The mother of the child testifies to an absence of roughly five to six minutes. She heard no commotion on the stairs. She heard no thump. . . .
    I am convinced that I cannot usurp the function of the jury. In other words if no reasonable jury could find for the State and that verdict stand the test of scrutiny, if on no reasonable view of the evidence could a verdict of guilty stand, then and only then am I privileged to withdraw the case from the jury consideration. As I understand it, I am not allowed to usurp their function. If there is evidence which they may elect to believe, considering their right to selective belief of the evidence, if the verdict could conceivably stand—now in other words some kind of

On appeal, the defendant, in challenging the sufficiency of the evidence, argues primarily that Claire Mondor's testimony was unworthy of belief and that the testimony offered on his behalf was "as reasonable as any offered by witnesses for the State." In *State v. McFarland*, Me., 369 A.2d 227, 229 (1977), we held that "unless testimony is either inherently improbable and incredible and does not meet the test of common sense, it is the function of a jury to determine the credibility of evidence even though it may be arguably contradictory or unreasonable." In *State v. Blier*, Me., 371 A.2d 1091, 1093 (1977), we explained that "it is for the jury to determine the credence to be given the witnesses, the weight of their testimony and ultimately to resolve the conflicts in the evidence." *Blier* also held that "proof beyond a reasonable doubt may rest upon the testimony of a single witness," even though contradicted by witnesses for the defense. *Id.*

The record indicates that the mother's testimony was not impeached to any significant degree. By their verdict, the jurors demonstrated their belief of her version of the incident and their disbelief of the version asserted by the defendant. We decline to substitute our judgment for that of the jury. Finding the evidence sufficient for conviction, we affirm.

The entry is:

Appeal denied.

Judgment affirmed.

ARCHIBALD, J., did not sit.

blow, the State has said it's a beating. The State asks the jury to infer a beating from the fact that the child screamed after the shed door slammed. That was the first sound, and nobody has testified to the child uttering a cry, not even the defense, at the foot of the stairs where the alleged fall took place, according to the defense story. There is no sound from that child. So I don't think I can sustain that motion, and we will go with the jury with great vigor in the morning. The defendant also moved for judgment notwithstanding the verdict and, in the alternative, for a new trial. These motions were also denied.