STATE of Maine,

v.

Vicki L. FLOOD.

Supreme Judicial Court of Maine.

Dec. 17, 1979.

---

Michael E. Povich, Dist. Atty., Bronson Platner, Asst. Dist. Atty. (orally), Machias, for plaintiff.

Hewes, Culley & Feehan, George W. Beals, Martica F. Sawin, Portland (orally), for defendant.

Before POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

POMEROY, Justice.

Defendant Vicki Flood appeals from the judgment of conviction entered by the Superior Court, Washington County. The jury found defendant guilty on two charges of assault arising out of two separate incidents, consolidated into a single trial at defendant's request. The issues on appeal are:

(1) whether the admission of the police chief's testimony that he called de-

fendant's companions *"druggies"*, based on personal knowledge, deprived defendant of her right to a fair trial, when one of the companions testified at trial;

(2) whether, with regard to the assault of June 7, 1978, the State failed to meet its burden of proof on the defense of justification.

We sustain the appeal.

On June 7, 1978, defendant was stopped by three police officers for speeding. She refused to sign the speeding ticket and was arrested by an officer of the Machias Police Department, who testified that he did not first tell her:

(1) that the signature was not an admission of guilt, but only to insure her appearance in court, or

(2) that she could be arrested for not signing it

Following her arrest, defendant said that she would sign the ticket, and the arresting officer testified at trial that at that point he would have allowed defendant to sign the ticket and go on her way; but Officer Ames, East Machias Police Department, who had previously been arguing with defendant, said she could not be unarrested. Defendant swore at Officer Ames and was arrested by him for disorderly conduct. Then, when he reached toward her, she punched him in the nose. Officer Ames arrested her for assault, 17–A M.R.S.A. § 207.[1] The charges for speeding and disorderly conduct were dropped prior to trial. At trial, defendant did not deny that she punched Officer Ames, but asserted that she did so in self-defense, because she reasonably believed that her action was necessary to defend herself from the imminent use of unlawful non-deadly force. 17–A M.R.S.A. § 108(1).

On August 14, 1978, defendant was stopped by two Machias Police Officers and arrested for operating under the influence of intoxicating liquor, 29 M.R.S.A. § 1312 and subsequently for assault for allegedly hitting one officer in the face and kicking another in the head. There was conflicting testimony on whether these assaults occurred, and if so, whether or not they were intentional, accidental, or in self-defense. The drunken driving charge was dismissed.

Both issues on appeal relate to the evidence introduced with respect to the first of the assault charges. First, defendant alleges that she was deprived of a fair trial by statements elicited from Officer Ames on direct examination. In issue is the following colloquy:

Q. *Now, when you were—you said at one point you were arguing with Vicky Flood; is that correct?*

A. *Yes.*

Q. *Did you say anything about those girls?*

A. *Yes, I did.*

Q. *What did you say?*

A. *Called them druggies.*

Q. *Why did you do that?*

A. *Because I know.*

Q. *Did you say anything further about them?*

A. *That they had been relations to me.*

Q. *That they were relations to you?*

A. *Yes, they were.*

Q. *Why did you say those things to her?*

A. *Because I knew that they were what I called them.*

At this point defense counsel objected, which objection was overruled by the Court.

Defendant asserts that the trial Justice erred in overruling the objection because the evidence was of no probative value and,

---

1. Section 207 provides:

   *(1) A person is guilty of assault if he intentionally, knowingly, or recklessly causes bodily injury or offensive physical contact to another.*

   *(2) Assault is a Class D crime.*

As noted in appellant's brief, defendant was not charged with *"Assault on an Officer,"* 17–A M.R.S.A. § 752–A for either incident, although both involved police officers. Assault on an officer requires causation of bodily injury rather than just of *"offensive physical contact"*. It is a Class C crime.

was highly prejudicial. Such prejudice resulted from the identification of defendant's companions, and defendant (by association), as engaged in certain criminal activity, inevitably coloring the jury's evaluation of defendant's conduct. Furthermore, defendant contends, the objected-to testimony served to impeach the credibility of defendant's companions, who were called as witnesses, and the testimony was impermissible for impeachment purposes under the Maine Rules of Evidence.

Under Rule 51, M.R.Crim.P., a party is required to state the ground of his objections. *"The overruling of a general objection preserves nothing for review unless it clearly appears that the evidence was inadmissible for any purpose whatsoever."* *State v. Kelley*, Me., 357 A.2d 890 (1976); H. Glassman, 3*Maine Practice*, 425 (1967). Our task, therefore, is to determine whether there was any tenable ground for admitting the evidence in question. As the discussion below will establish, we can find no grounds on which Officer Ames's statement that he *"knew that they were what I called them* [druggies]*"* could be deemed admissible evidence.

The statement that the officer called the occupants of the car *"druggies"* was itself objectionable hearsay, although arguably, as the State suggests on appeal, falling within the exception for *"then existing mental, emotional, or physical condition"* as showing the belligerent attitude of Officer Ames toward the defendant and her companions. Rule 803(3) M.R.Evid. Even in that context it might well be deemed more prejudicial than probative. Rule 403, M.R. Evid. Certainly a limiting instruction would have been in order. But the prosecution's posing of the question *"Why did you say those things to her?"* was clearly improper under the circumstances.

First, even if one grants that what Officer Ames thought the young women were was relevant to show his state of mind and motive, why he held that belief is totally irrelevant to the issues in the case, and therefore, inadmissible. M.R.Evid., R. 402.

Second, the testimony was probably effective in impeaching the testimony of defendant and more particularly of her two witnesses who were in the car with her on the evening in question. The question was improper and the answer inadmissible for impeachment purposes. Although the term *"druggies"* is somewhat ambiguous, it implies certain criminal activity. This implication is greatly strengthened by testimony from a police officer that *"he knew they were"* since the logical inference from this statement is that he knew this from criminal activities and records to which he had access because of his occupation. But the State introduced no evidence, documentary or otherwise, of any convictions of defendant's companions for drug-related activities. In *State v. Cuddy*, Me., 366 A.2d 858 (1976), relying on *State v. Toppi*, Me., 275 A.2d 805 (1971), and *State v. Ifill*, Me., 343 A.2d 5, 8 (1975), we made clear that the propounding of such a question as that asked by the prosecutor here is improper if he is not prepared to introduce documentary evidence of convictions admissible under R. 609, M.R.Evid. That case was similar to this in that the impeachment affected a witness (in that case a co-defendant), and the defendant claimed that *"the jury may well have considered the lack of credibility resulting from the alleged past criminal record of his co-defendant in determining appellant's own guilt."*[2] 366 A.2d at 860. In analyzing the potential prejudice from the improperly admitted evidence, the Court quoted approvingly from the United States Supreme Court's opinion in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968):

> the practical and human limitations of the jury system [are such that they] cannot be ignored. . . . An important element of a fair trial is that a jury consider only relevant and competent evidence bearing on the issue of guilt or innocence. *Id.* 391 U.S. at 135, 130, n.6, 88 S.Ct. at 1627, 1625.

**2.** Unlike in the case at bar, the defendant did not take the stand in his own behalf in *Cuddy*.

We do not find that significant in the analysis of the question of resulting prejudice.

The Court further determined that the trial justice in *Cuddy* should have been more sensitive to the possibility of prejudice. In sustaining that appeal, the Court concluded that:

> *The State's questions as to the prior record . . . were highly prejudicial. From the jury's verdict it is clear that they did not find the co-defendant's recital of the facts credible. To what extent the verdict was based on the questions propounded by the prosecutor we do not know. . . .*
>
> *We cannot ignore the high probability for prejudice to the appellant in a situation such as this. It seems unlikely that appellant received the fair trial to which he was entitled.*

■ If we assume that the term *"druggies"* does not connote criminal activity, but only what might be termed *"bad acts"*, the evidence is also inadmissible under R. 608, M.R.Evid. That rule allows impeachment of a witness by reputation evidence of character, but only of character for truthfulness or untruthfulness. There were no allegations here that defendant or her witnesses were under the influence of drugs at the time of the arrest. The alleged drug activity of the witnesses and/or defendant cannot be deemed to have any bearing on their character for truthfulness here. *See, State v. Cedre*, Me., 314 A.2d 790 (1974).

As this Court noted in *State v. Wyman*, Me., 270 A.2d 460, 463, the reason for excluding such character evidence is

> the tendency of triers of fact to give excessive weight against the accused respecting any specific illegal activity. . . The main thrust of such evidence, such as other unrelated wrongful acts of the accused, is to pollute the minds of the jury against the defendant.

■ In the case at bar the tendency of the evidence was to suggest that defendant and/or her companions were *"bad persons"* because they were known *"druggies"*. Here, as in *State v. Wyman, supra*, the defendant attempted to mitigate the effect of the erroneous admission of this evidence. He did this through eliciting on cross-examination that the term *"druggies"* was meant to apply only to two of the occupants of the car and that, to the officer's knowledge, they had not been convicted of any drug offenses. As the Court noted in *Wyman, supra* at 464, the defendant had a right to attempt to mitigate the prejudicial effect of the erroneously admitted evidence without losing the effect of his objections. In *Wyman*, the erroneously admitted evidence tended to show that the defendant, although married, was dating other women. The Court there noted that the natural effect of the introduction of such evidence, irrelevant to the charge of assault in that case, was to create antipathy against the defendant. The Court concluded that:

> *In all practicality his defense depended upon how much weight the jury would give to his testimony. Defendant's veracity would for all practical purposes settle the matter. How the jury would have resolved the issue of the defendant's guilt or innocence had the impact of the defendant's marital status not been with them in their deliberations is at best a matter of conjecture. Under the circumstances the defendant's right to a fair and impartial trial compels us to set aside his conviction and afford him a new trial.*

■ The analysis is apt to the circumstances of this case. Although three other persons testified on defendant's behalf, two of them were her companions on the evening in question, and their credibility and that of defendant was likely adversely affected by the improperly admitted testimony. The ultimate questions were whether the defendant had made out her justification defenses on both charged assaults. Here, as in *Wyman*, *"defendant's veracity would for all practical purposes settle the matter."*

In sum, we can find no grounds on which the evidence in question was properly admitted. Rather, the prosecutor's improper questioning and Ames's response had so great a potential for prejudicial effect that they impaired defendant's right to a fair and impartial trial, and both convictions must be set aside.

We need not reach the second issue on appeal.

The entry is:

Appeal sustained.

Remanded for further proceedings consistent with this opinion.

McKUSICK, C. J., and GLASSMAN, J., didn't sit.