**STATE of Maine**

v.

**John C. CONDON.**

Supreme Judicial Court of Maine.

Argued Sept. 23, 1983.

Decided Dec. 5, 1983.

James E. Tierney, Atty. Gen., Charles K. Leadbetter, Wayne S. Moss (orally), P.J. Perrino, Jr., Asst. Attys. Gen., Augusta, for plaintiff.

Daniel G. Lilley Law Offices, P.A., Daniel G. Lilley (orally), E. Paul Eggert, Daniel W. Bates, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant, John Condon, appeals from his conviction for three counts of murder, 17–A M.R.S.A. § 201(1)(A) and (B) (1983), one count of arson, 17–A M.R.S.A. § 802 (1983), and two counts of theft by unauthorized taking, 17–A M.R.S.A. § 353, 362 (1983) resulting from a jury trial in Superior Court (Cumberland County). On appeal he argues that the court erred in (1) admitting into evidence a tape recorded interrogation of the defendant; (2) admitting certain photographs of the victims; and (3) refusing to instruct the jury concerning the consequences of a verdict of not guilty by reason of insanity. He also maintains that the evidence required the jury to conclude that the defendant was not criminally responsible for his conduct. We find no error and deny the appeal.

On the night of September 28, 1981, Maureen and James Austin, the sister and brother-in-law of the defendant, and their twelve year-old son, Douglas, were killed in their home on Seabourne Drive in Yarmouth. James and Maureen sustained multiple stab wounds and Douglas's throat was slashed twice. In addition, a fire was set in an upstairs bedroom and some jewelry and the family automobile were taken.

Later that night the defendant was stopped by the South Portland police when he was suspected of operating a motor vehicle while under the influence of intoxicating liquor. He passed the field sobriety tests but was arrested for driving without a license. He was suspected of possible theft of the automobile which he was driving and of jewelry which was found in his possession.

The defendant was then transported to the South Portland police station for processing and questioning. *Miranda* warnings were read to him prior to his interrogation by Detective Sergeant Sanborn. The defendant made it known that he understood these rights. Although Sergeant Sanborn first learned of the homicides when midway through the interrogation, he was aware beforehand that a body had been found at the Austin residence when a Yarmouth police officer was sent to ascertain whether the defendant had permission to drive the automobile which he was operating at the time of his arrest. At no time prior to, or during, the interrogation was the defendant ever informed that he was a suspect in a murder case. Portions of the taped interrogation, both before and after Sergeant Sanborn was aware of the homicides, were received in evidence at trial.

On October 7, 1981, the grand jury (Cumberland County) returned an indictment charging the defendant with three counts of murder, one count of arson, and two counts of theft. Each of the murder counts accused the defendant alternatively of intentionally or knowingly causing the death of one of the Austins, or causing death by engaging in conduct which manifested a depraved indifference to the value of human life. Although the defendant entered pleas of not guilty and not guilty by reason of insanity, the central and most seriously contested issue at trial was whether the defendant at the time of his conduct suffered from a mental disease or defect which relieved him of criminal responsibility under 17–A M.R.S.A. § 39.

A jury trial resulted in convictions on all counts and this appeal followed.

## I.

The defendant first argues that it was error for the presiding justice to admit the taped interrogation into evidence. He maintains that the failure to inform him that he was a murder suspect (1) rendered his statements involuntary and (2) invalidated the waiver of his *Miranda* rights. We first address the issue of the voluntariness of the statements.

The record is clear that the objection to the admission of the taped interrogation was based solely on the ground that the defendant did not waive his right against self-incrimination. No objection on the basis of involuntariness was voiced in the trial court. We have repeatedly stated that the question of voluntariness is not saved on appeal where a defendant has made no at-

tempt to bring this issue to the attention of the trial justice. *State v. Melvin,* 390 A.2d 1024, 1030 (Me.1978); *State v. Tanguay,* 388 A.2d 913, 915–916 (Me.1978); *State v. Hudson,* 325 A.2d 56, 62 (Me.1974). An objection to the admissibility of a statement grounded solely on a *Miranda* violation fails to preserve for appellate review the separate voluntariness issue. *State v. Melvin,* 390 A.2d at 1030. Since the issue has not been preserved, we review the admission of the statement only for obvious error affecting substantial rights. *State v. Atkinson,* 458 A.2d 1200 (Me.1983); M.R.Crim.P. 52(b). After a careful review of the record, we find no such error.

■ We also find no error in the conclusion of the Superior Court that the defendant effectively waived his fifth amendment rights. The record provides rational support for the presiding justice's determination that the defendant knowingly, intelligently, and voluntarily waived his rights after receiving his *Miranda* warnings. *See State v. Bleyl,* 435 A.2d 1349, 1358 (Me. 1981).

■ *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), contains no explicit requirement that a suspect must be informed of the exact nature of the crime for which he is being questioned. While at least one trial court decision held that a confession is per se inadmissible unless the suspect is informed of the nature of the interrogation, *Schenk v. Ellsworth,* 293 F.Supp. 26 (D.Mont.1968), other courts have held that a suspect's ignorance of the exact nature of the interrogation is but a factor to consider in evaluating the totality of the circumstances in the determination of whether there has been an effective waiver of *Miranda. Carter v. Garrison,* 656 F.2d 68, 70 (4th Cir.1981) *cert. denied,* 455 U.S. 952, 102 S.Ct. 1458, 71 L.Ed.2d 668 (1982). *See United States v. McCrary,* 643 F.2d 323, 329 (5th Cir.1981); *Collins v. Brierly,* 492 F.2d 735, 738–739 (3rd Cir.), *cert. denied,* 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974). Subscribing to this interpretation of *Miranda,* it is our view that the trial justice rationally could find by a preponderance of the evidence that the defendant's

waiver was effective. The record contains no evidence of force or intimidation. The defendant acknowledges that he understood all of the elements of the warnings. The interrogation concerning a possible burglary and car theft and a possible homicide did not involve unrelated criminal conduct and crimes. *See Carter v. Garrison,* 656 F.2d at 70. All of the criminal activity occurred at the same time and place. It is significant that the defendant exercised his right to remain silent when the homicides became the focus of the interrogation. This evidence rationally supports the finding that the defendant effectively waived his rights under the fifth and fourteenth amendments.

## II.

The defendant argues that it was error for the presiding justice to admit into evidence two photographs depicting the bodies of the Austins.

As we stated in *State v. Joy,* "[P]hotographs are admissible if they are true and accurate depictions of what they purport to represent, if they are relevant to some issue involved in the litigation, and if their probative value is not outweighed by any tendency they may have toward unfair prejudice," 452 A.2d 408, 412 (Me.1982), quoting *State v. Crocker,* 435 A.2d 58, 75 (Me.1981). Conceding that the photographs are both relevant and an accurate depiction of the bodies, the defendant argues that their probative value is minimized by the admission of testimony and drawings which described the cause of death and the number and location of the stab wounds. He then maintains that the gruesome nature of the photographs compels a conclusion that their probative value is outweighed by their tendency toward unfair prejudice. We disagree.

■ The photographs, though gruesome, served both to clarify and to corroborate the medical testimony. *See State v. Crocker,* 435 A.2d at 75; *State v. Woodbury,* 403 A.2d 1166, 1169 (Me.1979). They also assisted the jury in its determination of whether

defendant engaged in conduct manifesting a depraved indifference to the value of human life. *See State v. Crocker,* 435 A.2d at 75; *State v. Conwell,* 392 A.2d 542, 544 (Me.1978).

The trial judge "has great latitude and discretion in determining the admissibility of photographs and unless there is shown an abuse of discretion, his ruling will not be disturbed on [appeal]." *State v. Crocker,* 435 A.2d at 76. (citations omitted.) We find no abuse of discretion on the part of the presiding justice.

### III.

The central issue of the trial was the defendant's mental condition at the time of the commission of the crimes. The defendant has a long history of manic-depression, and according to the medical testimony at trial, he was, at the time of the killings, either in the midst of a manic episode or at the beginning of a manic phase. Based on this evidence, the defendant asserts that a rational jury could not fail to find by a preponderance of the evidence that he was not criminally responsible for his conduct.

Under 17–A M.R.S.A. § 39(1) (1983), a person lacks criminal responsibility if, "at the time of the criminal conduct, as a result of mental disease or defect, he either lacked substantial capacity to conform his conduct to the requirements of the law, or lacked substantial capacity to appreciate the wrongfulness of his conduct." Whether a defendant lacked criminal responsibility is a question of fact. *State v. Foster,* 405 A.2d 726, 730 (Me.1979); *State v. Gatcomb,* 389 A.2d 22, 25 (Me.1978). The burden is on the defendant to prove by a preponderance of the evidence that he was not criminally responsible for his conduct. *State v. Buzynski,* 330 A.2d 422, 431 (Me.1974); 17–A M.R.S.A. § 39(1) (1983). The jury verdict will be disturbed only upon a strong showing that no reasonable fact finder could conclude otherwise than that the defendant lacked criminal responsibility for his conduct. *See State v. Ellingwood,* 409 A.2d 641, 646 (Me.1979).

Although there is expert testimony that the defendant lacked criminal responsibility for his acts, such testimony was contradicted by Dr. Ulrich Jacobsohn who testified that although the defendant was at the beginning of a manic phase at the time of the killings, his condition had not approached a psychotic level. He further opined that the defendant neither suffered from mania nor depression on that day. Even where expert testimony is uncontradicted by other expert evidence, the fact finder is free to reject the expert opinion of a psychiatrist. *State v. Boone,* 444 A.2d 438, 444 (Me.1982); *State v. Ellingwood,* 409 A.2d at 644. The jury is entitled to draw its own ultimate conclusions where the facts and assumptions underlying expert opinions are amply exposed at trial. *See State v. Ellingwood,* 409 A.2d at 644. In the present case, not only were the underlying facts and assumptions of the psychiatric testimony exposed at trial, but the expert testimony was in direct conflict. In addition, evidence of defendant's conduct contradicted the exculpatory expert testimony. Thus, there was sufficient evidence from which the jury reasonably could conclude that the defendant was criminally responsible for his conduct, and the verdict must stand.

### IV.

As the final point on appeal, the defendant assigns as error the court's refusal to instruct the jury concerning the consequences of a verdict of not guilty by reason of insanity. We have repeatedly stated that whatever may transpire after the verdict is not the concern of the jury. *State v. Ruybal,* 398 A.2d 407, 415 (Me.1979); *State v. Dyer,* 371 A.2d 1079, 1083 (1977). No sound reason has been advanced for altering our view.

The entry is:

Judgment affirmed.

All concurring.