**STATE of Maine**

v.

**Christopher CONLOGUE.**

Supreme Judicial Court of Maine.

Argued Nov. 16, 1983.

Decided April 3, 1984.

---

Franklin County, of aggravated assault, 17-A M.R.S.A. § 208 (1983). On appeal from the judgment, he assigns numerous claims of error. Since we find the presiding justice committed reversible error in excluding certain testimony offered by the defendant tending to show the crime had been committed by another person, we sustain the appeal and vacate the judgment of conviction.

## I.

During the summer of 1981, the defendant and Patricia Easler lived at a camp in Chesterville with Ms. Easler's three young children. Donna Dill, who visited the camp on August 6, 1981, observed what she believed to be abusive treatment of the 1½-year-old Tina Easler by the defendant, and alerted the Department of Human Services.

On August 7, 1981, in response to Donna Dill's report, a member of the Department of Human Services and Detective Lesson of the Franklin County Sheriff's Department visited the camp and took photographs of Tina Easler. Detective Lesson then drove Patricia Easler and Tina to Franklin Memorial Hospital where the child was examined. Dr. Cameron Bopp, the examining doctor, reported to Dr. William S. Lambert that he found multiple bruises and injuries around Tina's face. Despite Patricia Easler's explanation that Tina had fallen on some concrete blocks, Dr. Bopp detected no evidence the injuries were sustained in such a manner. He believed they probably had been caused by a "blunt type trauma."

Ten days later, on August 17, 1981, Patricia Easler brought Tina back to the emergency room of the same hospital. Dr. Lambert, an expert in battered child syndrome, was called in to examine Tina. Dr. Lambert's examination revealed that Tina suffered from an acute fracture of her right arm, a healing fracture of her forearm, a fracture of her pelvis, and substantial bruises and skin discoloration. Detective Lesson arrived at the hospital and again photographed Tina. In response to questioning by Dr. Lambert, Patricia Eas-

Janet T. Mills, Dist. Atty., Daniel W. Boutin, Asst. Dist. Atty. (orally), Farmington, for plaintiff.

William & Williams, Gerard K. Williams (orally), Farmington, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

The defendant Christopher Conlogue was convicted by a jury in the Superior Court,

ler explained Tina's fractured arm had been caused by a fall down stairs. Unsatisfied with this explanation, Dr. Lambert continued to question Patricia Easler about Tina's injuries. Finally, Patricia stated, "I didn't mean to hurt her." Although Patricia Easler did not admit to the police detective she had caused Tina's diagnosed injuries, she did tell Detective Lesson that she had used a cigarette lighter and a leather belt to discipline Tina.

On September 29, 1981, a joint indictment was returned against the defendant and Patricia Easler, charging each with aggravated assault. Patricia Easler subsequently agreed to plead guilty to a charge of endangering the welfare of a child, 17–A M.R.S.A. § 554 (1983), and to testify against the defendant, in return for a dismissal of the aggravated assault charge.

In a District Court proceeding held on December 15, 1981 and March 18, 1982, initiated by the Department of Human Services seeking custody of her three children, Patricia Easler for the first time retracted the admission she had made to Dr. Lambert. She acknowledged she had previously inculpated herself, but explained she had made the confession only because she was "covering up for Chris Conlogue." She told that court it was Conlogue, not she, who had injured Tina.

The defendant's trial began on October 25, 1982, in the Superior Court, Franklin County. After the State rested, the defendant moved for dismissal. The court denied the motion, but struck from the indictment the portion charging the defendant with "recklessly caus[ing] bodily injury to Tina M. Easler under circumstances manifesting extreme indifference to the value of human life." The jury returned a verdict on October 28, 1982, finding the

defendant guilty of recklessly causing serious bodily injury to Tina Easler. The defendant's motion for judgment notwithstanding the verdict was denied.

The defendant appeals, assigning error to the court's denial of the defendant's motion for imposition of sanctions against the State for a violation of the discovery rule, to several evidentiary rulings made by the presiding justice, and to instructions given to and inquiry of the jury during the course of its deliberation.

## II. *Evidentiary Rulings*

■■■ The admissibility of evidence is left to the sound discretion of the presiding justice. Generally, the determination of relevance [1] and the determination that the probative value of evidence is outweighed by its danger of unfair prejudice [2] are reviewed on appeal only for an abuse of that discretion. *State v. LeClair*, 425 A.2d 182, 186 (Me.1981); *State v. Kotsimpulos*, 411 A.2d 79, 81 (Me.1980).

### 1. *Admission of Photographs.*

Seven photographs of Tina Easler, taken by Detective Lesson on August 7 and 17, 1981, were admitted into evidence, over the defendant's *in limine* objection that they were prejudicial and of no probative value. On appeal, the defendant renews this Rule 403 argument, and further urges the State made no meaningful use of the photographs, and they were only cumulative of other evidence presented to the jury.

■■ We have repeatedly noted the admissibility of photographs lies within the discretion of the trial justice. *State v. Condon*, 468 A.2d 1348, 1351 (Me.1983); *State v. Joy*, 452 A.2d 408, 412 (Me.1982). The photographs in question depict the 1½-year-old Tina Easler with bruises covering

---

1. M.R.Evid. 401 provides:
   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

2. M.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

much of her torso, and large reddish-purple bruises on her scalp and behind her ears. The photographs were used by Dr. Lambert, the State's witness, to illustrate his medical testimony including his conclusion the injuries Tina sustained were not consistent with the explanation of their causation given by Patricia Easler to Drs. Bopp and Lambert. Here, as in *State v. Conwell*, 392 A.2d 542, 544 (Me.1978), the photographs "may well have been a valuable aid to the jury in answering the critical question of whether the injuries were purposefully inflicted or the result of an accidental fall." *See also Condon*, 468 A.2d at 1350 (gruesome photographs admissible to clarify and corroborate medical testimony); *State v. Woodbury*, 403 A.2d 1166, 1169 (Me.1979) (probative value of photograph illustrating medical testimony outweighs prejudice). We find the court did not abuse its discretion in admitting the photographs of Tina Easler.

### 2. *Defendant's Telephone Call to Dr. Lambert.*

■ On the night of August 17, 1981, after Tina Easler had been admitted to the hospital, and Patricia Easler had told Dr. Lambert it was she who had injured Tina, Dr. Lambert spoke to the defendant on the telephone. At trial, the doctor testified: "I can't exactly remember what he said, but there was a lot of profanity and vulgarity and threats to both my person and to my job, not only at Franklin Memorial Hospital but anywhere that I chose to work.... [The defendant] questioned my judgment as to admitting the patient to the hospital or even suspecting that Tina may have been injured by other than a fall."

The defendant objected to the introduction of this testimony as hearsay, unduly prejudicial, irrelevant to the charge against him, and inadmissible as character evidence. The court ruled the doctor's testimony concerning the conversation to be admissible.

On appeal, the defendant reasserts his contention the doctor's testimony concerning the telephone call with the defendant was inadmissible as hearsay. We cannot agree. The statement was admissible as an admission, under M.R.Evid. 801(d)(2).

In *State v. Jones*, 405 A.2d 149, 151 (Me.1979), we stated, "Any statement by a defendant in a criminal case which, in conjunction with proof of other facts and circumstances, tends to prove guilt is an admission." *See State v. Anaya*, 456 A.2d 1255, 1265 (Me.1983); *State v. Small*, 411 A.2d 682, 684 (Me.1980); *State v. Blouin*, 384 A.2d 702, 706 (Me.1978). The statements made by the defendant, after he learned the doctor suspected Tina to be a victim of child abuse, clearly could be construed as evidence of consciousness of guilt. The admission of the conversation for the jury's consideration was not an abuse of discretion.

### 3. *Prior Statement of a Witness.*

In the child protective proceeding before the District Court, Patricia Easler retracted her inculpatory statement made to Dr. Lambert on August 17, 1981. The defendant, pursuant to M.R.Evid. 801(d)(1), sought to introduce this testimony, claiming it was inconsistent with her testimony at the trial of the defendant. After receiving an offer of proof, the trial justice determined the testimony was not inconsistent and ruled the prior testimony inadmissible.

■ The presiding justice makes the preliminary determination whether a prior statement of a witness is inconsistent with that witness's testimony given at trial. *State v. St. Germain*, 369 A.2d 631, 632 (Me.1977); Field & Murray, *Maine Evidence* § 613.1 at 162 (1976). We have examined carefully the two statements of Patricia Easler, and agree with the trial court there is no inconsistency.

### 4. *Exclusion of Proffered Testimony.*

The defendant argues the exclusion of certain testimony of Dr. Lambert and three defense witnesses was erroneous. We agree.

On direct examination by the State, Dr. Lambert testified as to his training and experience with the treatment and diagnosis of child injuries, his training under Dr. Kempe, an international specialist and author of a treatise on "The Battered Child Syndrome," and the acceptance of the battered child syndrome as a diagnosis not only in Franklin County, but in the State of Maine. Dr. Lambert also testified as to the nature and extent of Tina Easler's injuries and his diagnosis of Tina as an "abused battered child."

On cross-examination the doctor testified Patricia Easler told him it was she who had injured Tina. The defendant, out of the presence of the jury, through testimony of Dr. Lambert, then made an offer of proof that Patricia Easler had also told Dr. Lambert she had been an abused child, the details of such abuse, and the doctor's opinion that, consistent with his experience and the teachings and treatise of Dr. Kempe, abused children often become abusive parents. The trial justice deemed this testimony inadmissible as violative of M.R.Evid. 404(a).[3]

The court also ruled inadmissible the testimony of three defense witnesses who, in offers of proof, indicated they would testify they were former neighbors of Patricia Easler and had seen her physically abuse her two older children. The court cited M.R.Evid. 404(a) as grounds for exclusion of this evidence. The defendant argues the exclusion of this testimony prevented him from pursuing a defense strategy of showing that Patricia Easler's confession had been true, and her later recantation false.

■■■ We have previously recognized the right of a criminal defendant "in appropriate circumstances ... to introduce evidence to show that another person committed the crime or had the motive, intent, and

opportunity to commit it." *State v. LeClair*, 425 A.2d 182, 187 (Me.1981), citing *Commonwealth v. Graziano*, 368 Mass. 325, 329, 331 N.E.2d 808, 811 (1975); 1A J. Wigmore, *Evidence* §§ 139–142 (Tillers rev. 1983). "The trial court also has discretion to exclude such evidence if it is too speculative or conjectural or too disconnected from the facts of the case against the defendant." *LeClair*, 425 A.2d at 187. *See also State v. Ledger*, 444 A.2d 404, 416 (Me. 1982). In other words, evidence tending to implicate another person, and deflect guilt from the defendant, must be admitted if it is of sufficient probative value to raise a reasonable doubt as to the defendant's culpability. As we stated in *LeClair*, "[T]he court should allow the defendant 'wide latitude' to present all the evidence relevant to his defense, unhampered by piecemeal rulings on admissibility." 425 A.2d at 186.

■■■ The presiding justice erred in his determination that M.R.Evid. 404(a) prohibited the introduction of this testimony. The medical testimony concerning battered child syndrome, and the eyewitness testimony of Patricia Easler's three former neighbors cannot fairly be called "character evidence" within the meaning of the rule. Field & Murray, *Maine Evidence* describes character as a "generalized description of one's disposition, or of one's disposition in respect to a general trait, such as honesty, temperance, or peacefulness." § 406.1 at 75. The rationale behind the rule limiting inquiry into the character of a witness is to ensure the trial remains focused on the guilt or innocence of the accused, and "avoids surprise, waste of time, and confusion, and makes the task of being a witness somewhat less unpleasant." M.R.Evid. 608 advisors' note.

■■■ Such considerations supporting the rule make it obvious that it is not the rule's

---

3. M.R.Evid. 404(a) provides, in pertinent part:
   (a) *Character evidence generally.* Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

   ....

   (2) *Character of witness.* Evidence of the character of a witness, as provided in Rules 607, 608 and 609.

purpose to preclude the introduction of evidence such as here offered by the defendant. Patricia Easler told the jury she had confessed, then retracted that confession when faced with the loss of her children in the subsequent District Court proceeding; she also told the jury she had been indicted with the defendant, and was allowed to plead guilty to a lesser charge in exchange for her later testimony against the defendant; Detective Lesson's testimony informed the jury that Patricia Easler had herself been an abused child. In these circumstances, any evidence the defendant could adduce which would tend to prove the truthfulness of Easler's confession, and thereby raise a reasonable doubt as to the defendant's own guilt, should have been admitted for the jury's consideration.[4]

The medical testimony of the State's expert witness concerning battered child syndrome, offered after the jury had heard evidence that Patricia Easler had been an abused child, tended only to rehabilitate her retracted confession. In *State v. Anaya*, 438 A.2d 892 (Me.1981), we held the trial court abused its discretion in excluding testimony concerning battered wife syndrome, offered by the defendant to support her claim of self-defense. We decided testimony as to how the syndrome may have been manifested in the defendant's behavior may have given the jury reason to believe that her conduct was consistent with her theory of self-defense. *Id.* at 894. Similarly, in the instant case, a description of battered child syndrome and the likelihood that Patricia's own history of child abuse would predispose her to abuse her own child, would have allowed the jury to weigh the credibility of Patricia's confession against the credibility of her later retraction. The defendant was improperly

denied the opportunity to have the jury consider the credibility, based on all available evidence, of Patricia Easler's recantation of her confession to the crime with which the defendant was charged.

We need not discuss the other issues on appeal because of the unlikelihood of their recurrence.

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

NICHOLS, ROBERTS and VIOLETTE, JJ., concurring.

SCOLNIK, Justice, with whom McKUSICK, Chief Justice, joins, dissenting.

I concur with parts I and II(1)–(3). I must dissent, however, as to part II(4). In my view, the proffered testimony was not only inadmissible pursuant to M.R.Evid. 404, but it also was an improper method of proof under M.R.Evid. 405. For these reasons, I find no error in the trial court's exclusion of the evidence and would affirm the judgment of the Superior Court.

While a defendant may prove any fact or circumstance tending to show that someone else committed the crime, such evidence is inadmissible unless it clearly links the other person to the commission of the crime. *E.g., Brown v. United States*, 409 A.2d 1093 (D.C.1979); *Fortson v. State*, 269 Ind. 161, 379 N.E.2d 147 (1978); *State v. Hamlette*, 302 N.C. 490, 276 S.E.2d 338 (1981); *State v. Harman*, 270 S.E.2d 146 (W.Va. 1980); *see also State v. LeClair*, 425 A.2d 182, 187 (Me.1981). Character evidence, however, merely creates a conjectural inference or suspicion as to another's guilt and therefore is inadmissible. *United*

---

**4.** All evidence must, of course, still meet the threshold requirement of relevance, M.R.Evid. 402, and is subject to exclusion for any of the reasons listed in M.R.Evid. 403. With this in mind, we affirm the decision of the Superior Court to exclude "vague and speculative" testimony given by a psychologist who had examined Patricia Easler two years prior to the de-

fendant's trial, and who thought Easler "might possibly be developing a psychosis." *See State v. Giglio*, 441 A.2d 303, 307 (Me.1982) (evidence of witness's "latent schizophrenia" inadmissible where its probative value found to be "questionable" and likely to "insert a wild card into the jury's deliberations").

*States v. Puckett,* 692 F.2d 663, 670–671 (10th Cir)., *cert. denied,* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982); *United States v. Bocra,* 623 F.2d 281, 286–287 (3rd Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *People v. Culhane,* 45 N.Y.2d 757, 758, 380 N.E.2d 315, 317, 408 N.Y.S.2d 489, 491, *cert. denied,* 439 U.S. 1047, 99 S.Ct. 723, 58 L.Ed.2d 706 (1978).

Generally, evidence of a person's character is not admissible for the purpose of proving that he "acted in conformity therewith on a particular occasion." M.R.Evid. 404(a). Rule 404 renders inadmissible evidence of the character of third persons, "even if the ultimate purpose of proof of another's character is to exculpate the accused." 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5236, at 385 (1978). *Cf.* 1 *Wharton's Criminal Evidence* § 195, at 406 (13th ed. 1972) ("The evidence by which the guilt of the third person is to be established must conform to all the rules regulating the admission of evidence."). For example, the rule does not allow evidence of the reputation of the victim for violence to support a claim of self-defense in a homicide case where the evidence was offered to show that the decedent was the aggressor. *State v. Mitchell* 390 A.2d 495, 501 (Me.1978); *see also State v. Lagasse,* 410 A.2d 537, 542 (Me.1980). A defendant is also precluded from introducing evidence of a rape victim's reputation for chastity in support of a claim of consent. In each situation, the evidence, although relevant, is excluded because it has only "slight probative value and is likely to be highly prejudicial, so as to divert attention from what actually occurred." M.R. Evid. 404 advisers' note, Field & Murray, *Maine Evidence* at 66 (1976).

Rule 404 may be viewed as a concrete application of the balancing of the probative value of character evidence against countervailing dangers of prejudice, confusion, distraction, and delay. The rule itself concludes that the probative value of character evidence is always outweighed by the danger of prejudice, confusion, distraction and delay. *See* 22 Wright & Graham, *supra,* § 5232, at 340 ("It is sometimes suggested that [Federal Rule 404] emerged from repeated applications of the doctrine of relevance to recurrent patterns in the use of circumstantial evidence."); McCormick, *Evidence* § 186, at 442 (1972) (common law rules regarding evidence of character were "molded by the effort to balance probative values against countervailing dangers of prejudice, distraction, etc."). Such is the justification advanced in the Adviser's Note to Rule 404. M.R.Evid. 404 adviser's note, Field & Murray, *supra,* at 66. (evidence of the character of criminal defendant is excluded "because the danger of prejudice ('he's a bad man, so he is probably guilty') outweighs the probative value;" evidence of the character of the victim of a crime is excluded "because it has slight probative value and is likely to be highly prejudicial, so as to divert attention from what actually occurred"). When the defendant, in an attempt to raise a reasonable doubt as to his own guilt, seeks to introduce character evidence of a third person, the evidence is no more probative and no less likely to confuse the issues, divert the jury, and waste time, than any other time when character evidence is sought to be introduced.

In the present case, both the medical testimony that abused children often become abusive parents[1] and the testimony of former neighbors as to prior acts of child abuse is evidence of a trait of Patricia Easler's character. *See State v. Lagasse,* 410 A.2d at 542 (evidence that the decedent regularly beat his wife was character evidence). This testimony was offered for the sole purpose of furnishing a basis for an inference that 1) Patricia Easler is an abusive parent and 2) on the particular occasion in question, she acted in conformity with her character. Because it is difficult logically to justify the drawing of such a chain of inferences, the trial justice, in ex-

1. Testimony was offered that Patricia Easler was an abused child.

cluding this evidence, was in full compliance with the letter and spirit of Rule 404.

Even if not subject to exclusion under Rule 404, the proffered character testimony was inadmissible for its failure to satisfy the requirements of Rule 405. With one exception, character must be proved by evidence of reputation M.R.Evid. 405(a). Proof may be made by evidence of specific instances of conduct only in those situations in which character is an essential element of a charge, claim or defense. M.R.Evid. 405(b). Dr. Lambert's testimony was not evidence of Patricia Easler's reputation. In fact, it was not even proof of what her character was but rather what it might possibly have been. Nor was it evidence of specific instances of her conduct. At most, it demonstrated that Patricia Easler was herself the victim of abusive conduct engaged in by others as a result of which expert witnesses deemed it probable that her victimization caused her to develop a child abusing character trait.

The testimony of the former neighbors to specific instances of Patricia Easler's conduct is also defective under Rule 405. Because her disposition to abuse her children is not an element of a charge, claim or defense,[2] her character may be proved only by reputation evidence.[3]

The Court's position which erroneously concludes that the proffered testimony is not character evidence cannot alternatively be justified by its assertion that the evidence is admissible for the purpose of impeaching the credibility of Patricia Easler's recantation of her confession. Impeachment by character evidence is governed by Rule 608. Field & Murray, *supra*, § 607.1. This rule is limited to evidence probative of the truthfulness or untruthfulness of the witness. Patricia Easler's alleged character trait for child abuse

has no bearing on her character for veracity. *Cf. State v. Flood*, 408 A.2d 1295, 1299 (Me.1979) (reputation for drug use was not evidence of witness's character for truthfulness). Therefore, the evidence was also inadmissible for the purpose of impeaching her credibility.

Furthermore, the Court's reliance on *State v. Anaya*, 438 A.2d 892 (Me.1981), is misplaced. In *Anaya*, we found it an abuse of the trial court's discretion to exclude, pursuant to M.R.Evid. 403, expert testimony regarding battered wife syndrome, when such evidence was offered to support the defendant's claim of self-defense or provocation to mitigate or justify her conduct. Its purpose was to show the psyche of battered wives and that the defendant's perceptions and behavior at the time of the killing were consistent with those exhibited by women who suffered repeated physical abuse at the hands of their husbands or lovers. This testimony supported the defendant's contention that she was indeed fearful of her abuser despite the fact that she continued to live with him. Thus, evidence of battered wife syndrome was admissible, not to prove conduct, but rather for the purpose of showing her mental perceptions to assist the jury in determining whether in such a state of mind she acted reasonably to protect herself from another beating. It was not evidence of character. Its admission contravened none of the rules of evidence and was governed exclusively by the general rules of relevance.

In the present case, however, the attempted use of evidence of battered child syndrome was totally dissimilar to the use of battered wife syndrome evidence found permissible in *Anaya*. The sole purpose of evidence of the vicious cycle where abused children grow up to become abusive parents was to allow the jury to infer that

---

**2.** A person's character is an essential element of a charge, claim, or defense "when character or a character trait is an operative fact which under the substantive law determines the legal rights of the parties." M.R.Evid. 405 advisers' note, Field & Murray, *supra*, at 72.

**3.** At trial, the defendant conceded that Rule 404 barred this evidence arguing instead that the rule as applied to this case was unconstitutional. On appeal, he neither briefed the point, nor argued orally, that the testimony of the neighbors was improperly excluded.

because Patricia Easler was an abused child, she was an abusive parent, and to further infer, that she abused her child, Tina, on the particular occasion in question. As earlier demonstrated, evidence for this purpose is inadmissible under the Maine Rules of Evidence.

Accordingly, the trial justice correctly excluded the evidence. In striving to achieve the worthy goal of affording a criminal defendant every exculpatory nuance, we are not free to stretch the rules to permit in substance and method the kind of "character evidence" which was offered in this case.

I would affirm the judgment.